IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARCOS CERVANTES, #Y23618, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-2176-RJD |
| | ) | |
| ANTHONY D. WILLS, et. al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# ORDER

**DALY, Magistrate Judge:**[1]

Plaintiff Marcos Cervantes is an inmate of the Illinois Department of Corrections ("IDOC") and was incarcerated at Menard Correctional Center ("Menard") (Doc. 1) but currently resides at Lawrence Correctional Center (Doc. 46). He brought this action under 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard arising out of an assault by a correctional officer, as well as the failure by other officers to get him medical attention for his injuries. Plaintiff filed his original Complaint on June 23, 2023 (Doc. 1), and his Amended Complaint on January 28, 2025. (Doc. 32). After threshold review of the Complaint, and based on the allegations in the proposed Amended Complaint, the Court designated the following counts:

**Count 1:** **Eighth Amendment cruel and unusual punishment claim against Defendant Porter for his use of excessive force on April 2, 2022.**

**Count 2:** **Eighth Amendment deliberate indifference to serious medical needs claim against Alex A. Maldonado, Sgt. C. Dallas, R. Hoffman, and**

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings including final entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 56).

**Dillon Loesing for failing to ensure Cervantes received adequate medical treatment on April 2, 2022.**

(Doc. 31, p. 9).

This matter is now before the Court on Defendants' Motion for Summary Judgment, filed by Defendants Dallas, Loesing, and Maldonado on July 9, 2026. (Doc. 52). On August 21, 2026, Defendant Hoffman filed a Motion for Leave to File Instanter. (Doc. 57). The Court granted this motion on November 17, 2026, and permitted Hoffman leave to file his Answer and motion to join codefendants' motion for summary judgment. (Doc. 61). On November 17, Hoffman filed his Answer (Doc. 62), and his motion to join codefendants' motion for summary judgment. (Doc. 63). Today, this Court also grants Defendant Hoffman's motion to join the motion for summary judgment. (Doc. 63).

Defendants submitted a memorandum in support of their motion that contains a Statement of Material Facts with proper citation to the record. (Doc. 52, pp. 2–3). By Order of the Court, on October 1, 2026, Defendants also filed a Rule 56 Notice advising Cervantes of the procedures set forth under FED. R. CIV. P. 56 ("Rule 56") and Local Rule 56.1, and the consequences of non-compliance. (Doc. 59). Specifically, Cervantes was advised that under Rule 56 and Local Rule 56.1, a party opposing a motion for summary judgment and asserting that a fact is genuinely disputed must support the assertion with citation to particular parts of materials in the record, including page or paragraph number upon which the opposing party relies. (*Id.*). Cervantes was also advised that the Court is not required to consider any material not properly cited in a response to a Statement of Material Facts. (*Id.*).

On October 30, 2026, Cervantes filed a response to Defendants' Motion for Summary Judgment. (Doc. 60). In his response, Cervantes disputes that he was seen by a nurse at

approximately 1:30 p.m. on April 2, 2022. (*Id.* at 3, ¶ 10). He further claims that his grievance refutes this assertion. (*Id.*). Cervantes attached the Grievance Officer's Report to his response, but not the grievance itself. (*Id.* at 5–7). The Grievance Officer's report does not contain any information that refutes Cervantes was seen by a nurse. (*Id.*). Cervantes also disputes the assertion that Defendants were not deliberately keeping him from seeing medical personnel. (*Id.* at 3, ¶ 11). Cervantes contends that in the incident reports, Defendants never stated that medical staff were contacted to assess him when he was found unresponsive. (*Id.*). This detail about the incident reports does not by itself refute that Defendants were not deliberately indifferent. Cervantes admitted and deemed material all other facts. (*Id.* at pp. 1–3).

Consequently, the Court adopts Defendants' factual allegations to the extent supported by admissible evidence. FED. R. CIV. P. 56(e) (providing that if a party fails "to properly address another party's assertion of fact" the court can "consider the fact undisputed for purposes of the motion."); *see also* Local Rule 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed"). The Court still views those facts in the light most favorable to Cervantes.

For the reasons explained below, the Motion for Summary Judgment is **GRANTED** (Doc. 52).

## Allegations in Plaintiff's Complaint

On April 2, 2022, at or around 10:00 a.m. to 11:30 a.m., Plaintiff Marco Cervantes was being escorted by Defendant Officer Porter[2] at the desk area of the healthcare unit building. (Doc. 32, p. 8). Porter began questioning Cervantes why he was in possession of a plastic cup. (*Id.*).

[2] Defendants concede that Plaintiff has alleged sufficient facts to defeat summary judgment and proceed to trial on Count 1 against Defendant Porter. (Doc. 52, p. 2, n. 1).

Porter then started calling Cervantes names, using offensive words like "queer" and "mother******." (*Id.*). Porter forcibly placed handcuffs on Cervantes's wrist to his back, and then forcibly pushed Cervantes's head down into a wall. (*Id.*). This caused Cervantes to become dizzy, and bleed from his mouth, lip, nose, and head. (*Id.*). Another officer, who was present during the incident and was the assigned officer to escort Cervantes to East House, assisted Porter by opening the exit door to escort Cervantes out of the healthcare unit building. (*Id.*).

Once outside the healthcare unit building, Porter shoved Cervantes, causing Cervantes to fall to the ground. (*Id.* at 8–9). While on the ground and unable to stand up, Porter told Cervantes: "get your b*tch a** up queer," as he began to put his hands around Cervantes's neck, adding pressure. (*Id.* at 9). This impaired Cervantes's ability to breathe. (*Id.*). After Porter let go of Cervantes's neck, but before Cervantes could regain breathing ability, Porter grabbed the back of Cervantes's shirt and lifted up. (*Id.*). This caused Cervantes to lose the ability to breathe again. (*Id.*). Porter let go, and another officer came to assist Porter in restraining Cervantes while Cervantes was still on the ground, unable to stand up. (*Id.*). An emergency response team member came and assisted Porter in escorting Cervantes to restrictive housing. (*Id.*).

At or around 11:30 a.m. to 2:15 p.m., shortly after the incident occurred, Cervantes was placed into his assigned cell in restrictive housing. (*Id.*). Cervantes was experiencing excessive lightheadedness, dizziness, and bleeding. (*Id.*). Cervantes asked his neighbor to call for medical attention and also attempted to call for medical staff himself by yelling out his cell door. (*Id.*). Cervantes lost consciousness during his attempt to walk to his cell door to yell for help. (*Id.* at 9–10). Cervantes partially regained consciousness when Defendants Hoffman, Loesing, Maldonado, and Dallas, came and carried him out of his cell. (*Id.* at 10). While Cervantes was regaining consciousness, he was placed in a wheelchair and taken to a room. (*Id.*). In this room, he was

questioned by Loesing, Dallas, and Maldonado. (*Id.*). Cervantes was only seen by mental health staff and at no point was he seen by medical staff. (*Id.*). Moreover, no medical staff was notified by Maldonado when Cervantes was found unconscious. (*Id.*).

**Evidence in the Record[3]**

Defendants provided incident reports from McClanahan, a Lieutenant at Menard, along with Defendants Hoffman, Dallas, Loesing, and Maldonado dated April 2, 2022. (Doc. 52-3). Lieutenant McClanahan's incident report stated that on April 2, 2022, at approximately 1:20 p.m., he was radioed to cell 2-25 because he was made aware Cervantes may have had a seizure. (*Id.* at 1). McClanahan wrote that he noticed blood on Cervantes's left cheek, but that he did not notice any open cuts. (*Id.*). McClanahan asked Cervantes if he could walk to the Infirmary to be seen by medical, but Cervantes would not provide a verbal response. (*Id.*). McClanahan advised Dallas, Loesing, Maldonado, and Hoffman to help Cervantes to the North 2 Infirmary. (*Id.*). McClanahan wrote that once in the Infirmary, Cervantes began speaking to staff and was seen by medical staff who only noticed a small cut to his lower lip area. (*Id.*). Cervantes was cleaned up, treated for his cut, and medically cleared to return to his cell. (*Id.*).

Defendant Maldonado's Incident Report stated that on April 2, 2022, at approximately 1:15 p.m., he was conducting a gallery tour when he noticed Cervantes, located in North 2 cell 2-25, laying on the floor. (*Id.* at 5). Maldonado went to retrieve a flashlight and when he looked into the cell, he saw a puddle of blood coming from Cervantes's mouth and noticed that he was unresponsive. (*Id.*). Maldonado radioed for Dallas to report to North 2 gallery. (*Id.*). Upon Dallas's arrival and seeing the blood from Cervantes, Dallas instructed Maldonado to open the cell door.

[3] This section is based on Defendants' Motion for Summary Judgment and the documents contained therein. The Court has omitted factual allegations that are not material to its ruling.

(*Id.*). Loesing and Dallas placed handcuffs on Cervantes, and Cervantes was removed from the cell. (*Id.*). Cervantes was then escorted to the North 2 Infirmary by Maldonado, Hoffman, and Loesing. (*Id.*). Nurse Gregson evaluated him and found a small cut on his inner lip. (*Id.*). Cervantes was medically cleared and returned to cell 2-25. (*Id.*).

Defendant Hoffman's incident report stated that on April 2, 2022, at around 1:15 p.m., he responded to a call to report to the North 2 Gallery. (*Id.* at 2). Upon arrival to cell 2-25, Dallas and Loesing were removing Cervantes from his cell. (*Id.*). Hoffman aided Loesing and Maldonado in escorting Cervantes to the North 2 Infirmary. (*Id.*). Cervantes was evaluated by Nurse Gregson and medically cleared to return to his cell. (*Id.*).

Defendant Dallas's incident report stated that on April 2, 2022, at approximately 1:15 p.m., Maldonado called him to report to the 2 Gallery. (*Id.* at 3). Upon arrival, Dallas met with Maldonado who waved him over to cell 2-25. Dallas observed Cervantes lying on the floor with a small puddle of blood near his mouth. (*Id.*). Dallas noticed that Cervantes was breathing and began calling to him. (*Id.*). Dallas then instructed Maldonado to open the cell door. (*Id.*). Dallas and Loesing entered the cell and placed handcuffs on Cervantes and then removed him from his cell. (*Id.*). Cervantes was escorted to the North 2 Infirmary by Hoffman, Loesing, and Maldonado. (*Id.*). Nurse Gregson evaluated Cervantes and found a small cut on his inner lip. (*Id.*). Cervantes was medically cleared and then returned to his cell. (*Id.*).

Defendant Loesing's Incident Report stated that on April 2, 2022, at approximately 1:15 p.m., he responded to a call to report to North 2 Gallery. (*Id.* at 4). Upon arrival to cell 2-25, Loesing proceeded to enter Cervantes's cell with Dallas. (*Id.*). Dallas handcuffed Cervantes and removed him from the cell. (*Id.*). Loesing, along with Hoffman and Maldonado, escorted

Cervantes to the North 2 Infirmary. (*Id.*) Nurse Gregson began evaluating him and he was ultimately medically cleared and returned to his cell. (*Id.*).

At his deposition on May 7, 2026, Plaintiff stated that after being carried out of his cell by Defendants, he was taken to the North 2 Infirmary. (Doc. 52-2, p. 66, ¶¶ 1–7). The IDOC offender outpatient progress notes for Cervantes, dated April 2, 2022, with a time of 1:30 p.m., noted a bottom lip injury, with two marks, and dried blood on the cheek. (Doc. 52-4.). The nurse also noted a history of seizures, and that they were unsure if Cervantes had lost consciousness earlier in the day. (*Id.*).

Also at his deposition, Cervantes stated that Defendants were not deliberate in their actions: "I -- I do feel that -- I mean, it's clear that the incident that I'm alleging regarding Porter was very malicious to say the least, but the incident regarding the other officers regarding medical staff I can't say wholeheartedly that it was malicious. I think it was just they were dealing with a lot that day. I don't think they were deliberately keeping me from seeing medical; however, I did not see medical so, but as far as punitive with Dallas and Maldonado and Hoffman and Loesing I don't -- I'm not seeking that. I don't think I will be seeking that." (Doc. 52-2, p. 81, ¶¶ 9–19).

**Summary Judgment Standard**

Summary judgment is appropriate only when the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must

set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

***Deliberate Indifference Standard***

The Eighth Amendment does not mandate comfortable prisons, but it also does not permit inhumane ones. *Brown v. Osmundson*, 38 F.4th 545, 549–50 (7th Cir. 2022) (internal citations omitted). The burden is on the prisoner to show that prison officials violated the Eighth Amendment, and it is a heavy burden to meet. *Pyles v. Fahim*, 771 F.3d 403, 408–09 (7th Cir. 2014) (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)). To succeed on a deliberate indifference claim, the plaintiff first must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendant(s) knew of but consciously disregarded. *Id.* at 550. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)).

The Seventh Circuit has held that "[a]ny injury to the head unless obviously superficial should ordinarily be considered serious and merits attention until properly diagnosed as to

severity." *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995); *see also Gutierrez*, 111 F.3d at 1371 (detainee who alleged he suffered a "severe head injury from slip and fall" stated claim for inadequate medical treatment); *Webster v. Loehrke*, No. 20-CV-880-PP, 2023 WL 5334364, at *5 (E.D. Wis. Aug. 18, 2023) ("A reasonable factfinder could conclude that the plaintiff's head injury, loss of consciousness, inability to stand and persistent pain constituted a serious medical need that satisfies the objective component of an Eighth Amendment claim"). Additionally, any "injury to the head inflicting prolonged pain and discomfort mandates medical evaluation within a reasonable period of time." *Murphy*, 51 F.3d at 719. However, an inmate is not entitled to "demand specific care" or to get "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

As to the subjective component, mere negligence, civil objective recklessness, or "medical malpractice do[] not become a constitutional violation merely because the victim is a prisoner." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, the defendant must have exhibited a conduct that approaches "a total unconcern for the prisoner's welfare in the face of serious risks" and is akin to criminal recklessness. *Brown*, 38 F.4th at 550 (internal citations omitted); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). The plaintiff need not prove that his complaints of severe pain were "literally ignored," but must show only that the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs. *Hayes v. Snyder*, 546 F.3d 516, 523–24 (7th Cir. 2008) (citations omitted).

Prison officials are required to provide inmates with medical care that is adequate in light of the severity of the condition and professional norms, and the receipt of some medical care does not automatically defeat a claim of deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "Deliberate indifference may occur where a prison official,

having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Id.* (internal citation omitted). Deliberate indifference also may be found where a prison official knows about unconstitutional conduct and facilitates, approves, condones, or "turn[s] a blind eye" to it, *Id.* at 781 (citations omitted), or where a prison official fails to consult or alert a medical professional where an inmate is unconscious and barely breathing. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 425 (7th Cir. 2017).

***Analysis***

Defendants argue they are entitled to summary judgment as a matter of law because: 1) Plaintiff was seen by medical personnel on April 2, 2022; 2) Defendants took reasonable measures to ensure Plaintiff received medical attention; 3) Defendants did not deliberately keep Plaintiff from receiving medical attention; and 4) Defendants are entitled to qualified immunity. Defendants are not disputing that Cervantes had a serious medical need, but rather are disputing they consciously disregarded this need.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (footnote omitted)). Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

While Cervantes denies ever receiving medical treatment, the medical record shows that he saw a nurse on April 2, 2022 at 1:30 p.m., which was during the identified timeframe of 11:30

a.m. to 2:15 p.m. (Doc. 52, p. 3, ¶ 10); (Doc. 32, p. 9); (Doc. 52-4). Defendants also provided Incident Reports from Lieutenant McClanahan and Defendants Hoffman, Dallas, Loesing, and Maldonado from the date of the incident. (Doc. 52-3). Those incident reports, like the outpatient progress notes (Doc. 52-4), indicate when he was found by Defendant Maldonado, he was taken to the Infirmary and assessed by a nurse.

In his response to the Motion for Summary Judgment, Cervantes claims that his grievance refutes that he was ever seen by a nurse. However, "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citations omitted)). Cervantes attached the Grievance Officer's Report to his response, but all it states regarding a medical visit is that "HCU noted no injuries reported as the Individual in Custody has claimed and the PREA complaint was found unsubstantiated through the Investigation by the IA." (Doc. 60, p. 5).

Cervantes seems to interpret this statement as meaning that he was not seen by medical personnel and additionally points out that the nurse was not named in the outpatient progress notes. Yet, looking at the Grievance Officer's response, clearly he was seen and evaluated in the Health Care Unit and it seems that "no injuries reported as the Individual in Custody has claimed" may have been written to indicate that the nurse's assessment was not consistent with Cervantes's claims in his grievance. Whatever this statement was intended to mean, it does not refute that Cervantes was seen by medical staff. In addition, while not named in the outpatient progress notes, the nurse who treated Cervantes was identified as Nurse Gregson in the incident reports of Defendants Hoffman, Dallas, Loesing, and Maldonado. The absence of the nurse's name in the

outpatient progress notes does not by itself destroy its credibility. *See Quinn v. Wexford Health Sources, Inc.*, 2020 U.S. Dist. LEXIS 30820, at *5 (S.D. Ill. Feb. 24, 2020) (". . . Federal Rule of Evidence 901(b)(4) provides that the authentication requirement may be satisfied where items of evidence have 'distinctive characteristics' that serve to identify them to the court, such as 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'") (internal citation omitted).

Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept the statement as true for the purposes of summary judgment. *Webb v. Budz*, 480 F. Supp. 2d 1050, 1056 (N.D. Ill. Mar. 27, 2007). Thus, the Court will not consider Cervantes's attempts to challenge the validity of the medical records because he does not present any contrary evidence or offer anything to make the Court question the records' credibility. *See Boyce v. Obaisi*, 2015 U.S. Dist. LEXIS 123170, at *7 (N.D. Ill. Sept. 16, 2015) (citations omitted).

Cervantes further points to Defendants' failure to state in their incident reports that medical staff were contacted when they discovered him unresponsive as evidence they were deliberately indifferent. Yet, in each incident report, Defendants wrote that Cervantes was taken to the Infirmary. Defendant Maldonado noticed Cervantes at 1:15 p.m., and the outpatient progress notes reflect that Cervantes was seen fifteen minutes later at 1:30 p.m. Even if this was deemed a significant enough delay to establish deliberate indifference, Cervantes has not introduced verifying medical evidence that shows his condition worsened because of the delay, as required. *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). Thus, the fact that Defendants' narrative did not state that medical staff were contacted immediately when Plaintiff was found is not dispositive of deliberate indifference.

Finally, at his deposition, Cervantes stated that he believed Defendants' actions were not malicious or deliberate. While a deliberate indifference claim depends on Defendants' mental state and conduct, and not Plaintiff's, when taking the evidence as a whole, Cervantes's statement makes it seem less likely that Defendants had a "total unconcern for the prisoner's welfare" that was akin to criminal recklessness. *Brown*, 38 F.4th at 550 (internal citations omitted); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

On April 2, 2022, Defendants responded to Cervantes's complaints and took him out of his cell and to the Infirmary where he was seen by a nurse. Cervantes has not shown that there is any genuine dispute of material fact and accordingly, no reasonable jury could conclude that Defendants were deliberately indifferent to his medical needs. As such, the Court does not find it necessary to address the qualified immunity argument, and Defendants are entitled to summary judgment as a matter of law.

## Conclusion

For these reasons, the Motion to Join Codefendants' Motion for Summary Judgment (Doc. 63) is **GRANTED**. The Motion for Summary Judgment (Doc. 52) filed by Defendants Dallas, Loesing, and Maldonado, and joined by Defendant Hoffman, is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 18, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**